UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

                                    Case No. 18-cr-186-pp

v.

ANTWUAN PUGH

        Defendant.

---

**ORDER DENYING AS PREMATURE DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE/SENTENCE REDUCTION UNDER FIRST STEP ACT (DKT. NO. 37)**

---

      The defendant, who is in custody at FCI Elkton serving a thirty-six-month sentence following his December 2018 guilty plea to being an unlawful user of marijuana in possession of firearms, has filed a motion under 18 U.S.C. §3582(c)(1), asking the court to release him due to various issues related to the COVID-19 virus. Dkt. No. 37.

      The defendant is twenty-seven years old. He reports suffering from asthma, high blood pressure and anxiety. Dkt. No. 37 at 2. His presentence report confirms that he has asthma (although it notes that while he had been prescribed an Albuterol inhaler for his asthma at one point, as of the time of the presentence report, March 2019, the defendant had not used the inhaler in many years). Dkt. No. 24 at 18. The report also confirms that the defendant suffers from high blood pressure. Id.

1

The defendant reports that his case was non-violent. Dkt. No. 37 at 2. There were no allegations that the defendant shot anyone with the guns with which he was charged. The evidence indicated, however, that the defendant and his brother had bought numerous guns during 2014 and 2015, some of which ended up being used in violent crimes such a homicide and robberies. Dkt. No. 24 at 4. The defendant also was pulled over driving a car that had sped away from a shooting a week earlier. Id. at 5. A search of his home after the traffic stop revealed loaded guns, one of which contained bullets with casings matching those found at the scene of the earlier shooting. Id.

The defendant says that he has no criminal history of any kind. Dkt. No. 37 at 1. The presentence report revealed only a couple of disorderly conduct fines for failure to appear in court and a fine for possession of marijuana, as well as some traffic offenses. Id. at 12-13. Probation reports that the defenant has had no disciplinary violations while in custody, and that he has been working toward earning his GED, as well as completing a job fair and some programming. Dkt. No. 39 at 2.

Before his arrest, the defendant lived at 8245 North 107th Street in Milwaukee with his parents, Anthony and Regina Pugh, both retired from Masterlock. Id. at 24. The defendant says that he can be released to 8245 North 107th Street, Apt. 205 in Milwaukee—in other words, back to his parents' house. Dkt. No. 37 at 2. As of a couple of days ago, probation had not been able to reach the defendant's parents to confirm that he could live with them. Dkt. No. 39 at 2.

The focus of the defendant's motion, however, is the impact that COVID-19 has had on his facility. He reports that since he has been there, nine inmates have died as a result of COVID-19, two of whom were sick. Id. at 1. He says he has friends who are sick and on ventilators, and that thirty-six other inmates and more than twenty staff members are ill. Id. The defendant reports that there is no case manager or unit team on his unit. Id. He says it is impossible to practice social distancing, and that the facility is not safe. Id. at 2. He is afraid he will not make it home alive or will be infected and released with the virus. Id.

The court must deny the defendant's motion at this time because he filed it too soon. Under 18 U.S.C. §3582(c)(1)(A), a defendant first must ask the warden of his facility for compassionate release. The warden has thirty days to act on the defendant's request. If the warden doesn't act in thirty days, *then*—after the thirty days have expired—the defendant may file his motion with the court. If within the thirty days, the warden denies the defendant's request, he must use the BOP grievance procedure—the Administrative Remedy Procedure—to appeal that denial, and he must "exhaust" that process by appeal as far up as he can. Only after he has appealed the denial of his request to the highest level may he ask the court for release. This court does not have the authority to rule on the defendant's request unless (a) he makes the request to the warden and the warden fails to respond in thirty days, or (b) he makes the request of the warden, the warden denies it and the defendant

3

appeals that denial to the highest level possible under the Administrative Remedy Procedure.

The probation department contacted FCI Elkton and learned that the defendant *has* asked the warden there for compassionate release. Dkt. No. 39. It appears the defendant made that request on April 25, 2020. Id. As of today—May 5, 2020—only ten days have passed since the defendant made his request to the warden. He did not wait the thirty days required by the statute—that is, until at least May 25—to see what the warden's answer would be. The court cannot consider or rule on the defendant's motion until the thirty days have passed *and* either the warden fails to respond to the defendant's request or denies the defendant's request (in which case, the defendant must appeal that denial through the BOP grievance program before the court can consider his motion).

If the warden does not respond to the defendant's request by May 25, 2020, the defendant may again ask the court for relief. The same is true if the warden denies the defendant's request and the defendant completes the BOP grievance appeal process. If the defendant renews his request at the appropriate time, the court then will have to consider the factors that the government discusses in its response—whether the defendant is a danger to the safety of anyone else or to the community (the government argues that he is, given the offense of conviction and the facts described above), whether there are "extraordinary and compelling reasons" to reduce the defendant's sentence,

4

Case 2:18-cr-00186-PP    Filed 05/05/20    Page 4 of 6    Document 41

and whether the sentence reduction would be consistent with the policy statement in U.S.S.G. §1B1.13. Dkt. No. 40 at 9.

The defendant should be aware that he does not meet many of the factors that constitute "extraordinary and compelling reasons"—he is not terminally ill, he is not elderly and suffering from age-related deterioration from which is not expected to recover, he has not indicated that the caregivers of any dependents are no longer able to care for them. The "extraordinary and compelling reason" the defendant suggests is the severe outbreak of COVID-19 at FCI Elkton, his own underlying health issues, and his very understandable fear for his own safety. Dkt. No. 37 at 1. The government argues that this, standing alone, is not enough to justify compassionate release, explaining in detail the measures the BOP has taken to reduce the spread of the virus. Dkt. No. 40 at 3-5. The government also notes that the Attorney General has given the BOP director expanded authority to use the authority given to him by law to put prisoners in home confinement. Id. at 6-7. The BOP has represented that it is reviewing prisoners to determine whether they should be placed on home confinement, even if they don't ask. The defendant does not say whether he has been considered for home confinement.

This court does not mean to minimize the defendant's understandable fear. The BOP web site confirms that eighty-eight inmates and forty-nine staff at FCI Elkton have been confirmed with the virus, and that seven inmates have died. https://www.bop.gov/coronavirus/. The court does not doubt that the

defendant is correct that it is hard, if not impossible, to practice social distancing in prison. The defendant's fear is completely understandable.

If the defendant does file another motion with this court (when the time is right—either if the warden doesn't respond to his request by May 25, or the warden denies his request and the defendant exhausts the BOP grievance process), he may file a new motion, focusing on why he does not believe he is a danger to the community, why he believes there are extraordinary and compelling reasons for his release, what he plans to do when he is released. He also should, if he can, communicate with his parents, to make sure they are willing to have him live with them and to make sure that his presence in their home will not pose a risk to them.

The court hopes the defendant will do his best to stay safe (understanding that it is very hard) and encourages him to try to stay in contact with the warden's office to find out about the result of his request to the warden.

The court **DENIES AS PREMATURE** the defendant's motion for compassionate release/sentence reduction under the First Step Act. Dkt. No. 37.

Dated in Milwaukee, Wisconsin this 5th day of May, 2020.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **Chief United States District Judge**